*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1315**

State of Minnesota,
Respondent,

vs.

Katherine Trinka Olson,
Appellant.

**Filed July 14, 2014
Affirmed
Kirk, Judge**

Stearns County District Court
File No. 73-CR-09-5837

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul,
Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Hooten, Judge; and Reyes,

Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from her conviction of first-degree controlled substance crime—possession with intent to sell, appellant argues that (1) the district court erred by denying her motion to suppress evidence seized during the search of her house, and (2) the district court abused its discretion by admitting evidence of the controlled buy as *Spreigl* evidence. We affirm.

## FACTS

On May 14, 2009, a confidential informant, J.R., agreed to participate in a "controlled buy" from appellant Katherine Trinka Olson. Officers from the Central Minnesota Violent Offender Task Force outfitted J.R. with electronic surveillance equipment, provided her with $700, and searched her before and after she met with appellant. During the controlled buy, J.R. asked appellant for two "eight-balls," and appellant responded that she only had one "eight-ball" and a "teener," but she was planning to get more. An "eight-ball" refers to approximately 3.75 grams of methamphetamine, and a "teener" is approximately 1.75 grams of methamphetamine. J.R. agreed to buy the "eight-ball," the "teener," and several prescription pills.

After she left appellant's house, J.R. gave a task force officer a bag containing what the Minnesota Bureau of Criminal Apprehension later determined was 4.3 grams of methamphetamine, and 11 oxycodone pills, three tramadol pills, and one diazepam pill. J.R. also gave the officer $180 in change. The officer gave J.R. $60 for participating in the controlled buy.

On May 15, the task force officer applied for a search warrant based on the information obtained during the controlled buy, and the district court signed the search warrant. On May 18, the task force executed the search warrant at appellant's house and arrested appellant. During the search of appellant's house, officers found a black purse sitting on a table in the living room; the purse contained appellant's driver's license and credit cards in her name. Inside the purse was a black cigarette pouch containing several baggies of methamphetamine, two tranxene pills, a shard of methamphetamine wrapped in a dollar bill, and a digital scale. Near where the purse was sitting on the table, the officers found a bag containing 31 xanax pills, 36 desoxyn pills, and two tranxene pills.

In the kitchen, the police found a property tax statement for the house in appellant's name and pieces of paper with what appeared to be amounts of money written on them. The officers also found several firearms, drug paraphernalia, and stashes of United States currency throughout the house.

Respondent State of Minnesota charged appellant with controlled substance and firearms crimes, and appellant moved to suppress evidence discovered as a result of the search. Following a contested omnibus hearing, the district court denied the motion.

In February 2013, the state filed an amended complaint, charging appellant with first-degree controlled substance crime—possession with intent to sell (count one), second-degree controlled substance crime—possession (count two), two counts of fifth-degree controlled substance crime—possession (counts three and four), and receiving stolen property (count five). The district court held a jury trial a few days later. The state dismissed count five of the complaint after the trial began. The jury found appellant

guilty of the remaining four counts alleged in the complaint, and the district court convicted appellant of count one, sentenced her to 86 months in prison, and dismissed the remaining counts. This appeal follows.

## D E C I S I O N

**I.      The district court did not err by denying appellant's motion to suppress the evidence discovered in the search of her house.**

The United States and Minnesota Constitutions require search warrants to be supported by probable cause. U.S. Const. amend IV; Minn. Const. art. I, § 10. An affidavit that supports a search warrant application "must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 166, 98 S. Ct. 2674, 2681 (1978). Courts presume the validity of an affidavit supporting a search warrant, but a defendant may challenge the specific portion of the search warrant affidavit he claims to be false upon a proper showing of proof. *Id.* at 172, 98 S. Ct. at 2684.

"A search warrant is void, and the fruits of the search must be excluded, if the application includes intentional or reckless misrepresentations of fact material to the findings of probable cause." *State v. Moore*, 438 N.W.2d 101, 105 (Minn. 1989) (citing *Franks*, 438 U.S. at 171-72, 98 S. Ct. at 2684-85, and *State v. Causey*, 257 N.W.2d 288, 292 (Minn. 1977)). To invalidate a warrant, the defendant must satisfy the two-prong *Franks* test by showing that (1) "the officer deliberately made a statement that was false or in reckless disregard of the truth," and (2) "the statement was material to the probable

4

cause determination." *State v. McDonough*, 631 N.W.2d 373, 390 (Minn. 2001) (citing *Franks*, 438 U.S. at 171-72, 98 S. Ct. at 2864).

This court will only set aside the district court's findings of fact regarding whether a police officer deliberately made statements in the search warrant affidavit that were false or in reckless disregard of the truth if they are clearly erroneous. *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010). We review de novo the district court's determination of whether the alleged misrepresentations in the search warrant were material to the probable cause determination. *Id.*

Appellant argues that the task force officer deliberately made a false statement in the affidavit supporting the search warrant by stating that "[J.R.] advised that there were additional controlled substances in the residence after completion of the controlled purchase." Appellant argues that the statement was a false or, at the very least, reckless misrepresentation of material fact because J.R. did not state in the audio recording of the controlled buy or her later conversation with the task force officer that she saw appellant with additional drugs beyond those which she purchased. The state contends that in the context of the entire search-warrant application and the other information known to the officer, the statement was imprecise, but it did not constitute a false or reckless misrepresentation of material fact.

In its order denying appellant's motion to suppress, the district court found that appellant failed to show that the officer deliberately made a statement that was false or in reckless disregard for the truth. The district court stated that appellant disregarded the portions of the transcript of the controlled buy where appellant indicates that she had

additional prescription pills in her possession. Finally, the district court found that even if the officer's statement was false or in reckless disregard of the truth, appellant's motion would still fail because the statement was not material to the probable cause determination.

Here, the audio recording of the controlled buy reflects that J.R. and appellant discussed the drugs that appellant had available for sale in her home. Appellant told J.R. that she did not have much methamphetamine, but she was going to get more. Appellant and J.R. had a detailed discussion about the prescription pills appellant had available, and J.R. purchased several pills. And appellant stated that her boyfriend had moved in with his drug dealer "other than me" and described that person as the "one he actually gives his money to." During J.R.'s audio-recorded conversation with the task force officer after the controlled buy, they discussed the drugs that J.R. bought from appellant, and J.R. stated that appellant was going to pick up more drugs.

We agree with appellant that J.R. did not explicitly state in the audio recording of the controlled buy or her later recorded conversation with the task force officer that appellant had additional controlled substances in her home. Thus, the officer's statement in the search-warrant affidavit was not literally true. But innocent or negligent misrepresentations will not invalidate a warrant. *Causey*, 257 N.W.2d at 292. There were numerous statements made in J.R. and appellant's conversation implying that appellant possessed additional controlled substances in her home. Appellant had enough pills in her possession to sell to J.R., and, unlike with her methamphetamine supply, she never indicated that she did not have any more pills available. Further, there is no

6

indication that the officer deliberately or recklessly included J.R.'s statement in the search warrant affidavit. *See id.* We therefore conclude that any misrepresentation that the officer made when he included the challenged statement in the search warrant affidavit was innocent or negligent. Accordingly, the district court did not err by denying appellant's motion to suppress. Because we reach this conclusion, we do not address appellant's argument that the officer's alleged misrepresentation was material.

**II.    The district court did not abuse its discretion by admitting evidence of the controlled buy as *Spreigl* evidence.**

In general, "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). Such evidence, referred to as *Spreigl* evidence, may be admissible for other reasons, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Appellate courts review the district court's decision on whether to admit *Spreigl* evidence for an abuse of discretion. *State v. Blom*, 682 N.W.2d 578, 611 (Minn. 2004). On appeal, the defendant bears the burden of showing that the district court erred by admitting the evidence and that he was prejudiced by the evidence's admission. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998).

Before admitting *Spreigl* evidence, the district court must consider whether: (1) the state gave notice of its intent to introduce the evidence; (2) the state clearly indicated what the evidence will be offered to prove; (3) clear and convincing evidence establishes that the defendant participated in the prior act; (4) the evidence is relevant and material; and (5) probative value of the evidence is outweighed by its potential prejudice

to the defendant. *Angus v. State*, 695 N.W.2d 109, 119 (Minn. 2005). "When it is unclear whether *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded." *Kennedy*, 585 N.W.2d at 389.

Here, the state filed notice of its intent to offer evidence of the controlled buy. The state argued that the evidence was admissible to prove that appellant possessed the controlled substances with intent to sell and that she knew she possessed controlled substances. After a hearing, the district court found that the evidence was relevant and material to the state's case as proof of knowledge and a common scheme or plan. The district court found that the probative value of the evidence outweighed any risk of unfair prejudice.

During the trial, the state presented evidence of the controlled buy through testimony from J.R. and three police officers who participated in the controlled buy. The state also offered several exhibits, including the audio recording of the controlled buy, the methamphetamine and the pills that J.R. purchased, and an audio recording of J.R.'s phone call to appellant to set up the transaction. Before the evidence was introduced, the district court cautioned the jury that the evidence was admissible for a limited purpose and was not offered as proof of appellant's character. The district court repeated the limiting instruction during the final jury instructions.

Appellant contends that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See Angus*, 695 N.W.2d at 119. To address appellant's argument, this court first must consider the probative value of the disputed evidence. *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). The evidence of

the controlled buy had high probative value. The state charged appellant with violating Minn. Stat. § 152.021, subd. 1(1) (2008), which provides that "[a] person is guilty of controlled substance crime in the first degree if . . . on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing cocaine, heroin, or methamphetamine." Under Minn. Stat. § 152.01, subd. 15a(1), (3) (2008), the definition of "sell" includes "to possess with intent to . . . sell, give away, barter, deliver, exchange, distribute or dispose of to another." Thus, the state was required to prove that appellant knowingly possessed ten grams or more of controlled substances with the intent to sell.

At trial, appellant acknowledged that she used methamphetamine and she sold it on one occasion to J.R., but she denied that she was a drug dealer. Appellant also denied that the black purse that the officers seized during the search of her house, or its contents, belonged to her. As a result, the evidence of the controlled buy was very relevant to satisfying the elements of the crime because it allowed the state to prove that appellant intended to sell the controlled substances. *See* Minn. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

In contrast, the risk of unfair prejudice to appellant was low. "Unfair prejudice" is more than "damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Schulz*, 691 N.W.2d at 478. The evidence of the controlled buy was

9

damaging to appellant, but it did not persuade the jury by illegitimate means. The evidence was relevant and admissible, and the district court mitigated any risk of prejudice to appellant by giving a limiting instruction to the jury before the evidence was introduced and in its final jury instructions. And appellant vigorously cross-examined all of the witnesses. Therefore, the probative value of the evidence of the controlled buy was not outweighed by the potential for unfair prejudice.

While appellant did not object at trial, she argues on appeal that the number of witnesses and exhibits presented concerning the controlled buy and the prosecutor's reference to this evidence during closing argument raised the risk of unfair prejudice. "On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights." *State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006). This standard requires (1) error, (2) that is plain, and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "An error is plain if it was clear or obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotations omitted). If a defendant demonstrates plain error in a prosecutorial misconduct case, the burden then shifts to the state to demonstrate lack of prejudice. *Ramey*, 721 N.W.2d at 302. To do so, the state must "show that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted).

Appellant has not demonstrated that the amount of evidence the state introduced regarding the controlled buy was plain error; instead, she argues that it raised the *risk* of unfair prejudice. Appellant has also not shown that the prosecutor's reference to the

10

evidence of the controlled buy during closing argument was plain error, and our review of the prosecutor's argument in its entirety establishes that the prosecutor was arguing that appellant's testimony was not credible, which he was permitted to do. *See State v. Lopez-Rios*, 669 N.W.2d 603, 614 (Minn. 2003) (stating that a prosecutor may argue in closing argument that certain witnesses were or were not credible).

Accordingly, the district court did not abuse its discretion by admitting evidence of the controlled buy as *Spreigl* evidence.

**Affirmed.**